Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000385
28-FEB-2020
08:20 AM

NO. CAAP-17-0000385

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee, v.
DEWITT LONG, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 15-1-0840)

MEMORANDUM OPINION
(By: Ginoza, Chief Judge, Fujise and Wadsworth, JJ.)

Defendant-Appellant Dewitt Long (Long) appeals from the April 5, 2017 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit (Circuit Court).[1]

BACKGROUND

In August 2014, the complaining witness (CW), then a thirteen-year-old female, was confronted by her father and stepmother about smoking marijuana in a video on her phone. CW revealed she smoked marijuana to cope with past sexual abuse by Long, her mother's former boyfriend. In CW's account, Long abused her on weekend visits to the homes Long shared with CW's mother. Long would wait until CW's mother left for work early in the morning, check if her siblings were sleeping, enter her room, close the door and blinds, and get into her bed. CW described Long as placing his tongue in her vagina, placing his fingers in her vagina, touching her breasts with his hand and mouth, kissing her, causing CW to touch his penis, and rubbing his penis against her vagina while wearing a condom. The abuse took place from

---

[1] The Honorable Colette Y. Garibaldi presided over trial. The Honorable Paul B.K. Wong presided over the sentencing phase.

when CW was aged seven to eleven years old, ending when her mother moved to California in September 2012. After this disclosure, CW filed a police report.

After a jury trial, the Circuit Court convicted Long of two counts of Sexual Assault in the First Degree (Sex One) in violation of Hawaii Revised Statutes (HRS) § 707-730(1)(a) (2014)[2] (Counts 1 and 8), and five counts of Sexual Assault in the Third Degree (Sex Three) in violation of HRS § 707-732(1)(c) (2014)[3] (Counts 2, 3, 4, 5, and 6). Long was sentenced to life

---

[2] HRS § 707-730(1) provides, in relevant part, "(1) A person commits the offense of sexual assault in the first degree if: (a) The person knowingly subjects another person to an act of sexual penetration by strong compulsion[.]"

HRS § 707-700 (2014) provides in relevant part:

"Strong compulsion" means the use of or attempt to use one or more of the following to overcome a person:

(1) A threat, express or implied, that places a person in fear of bodily injury to the individual or another person, or in fear that the person or another person will be kidnapped;

(2) A dangerous instrument; or

(3) Physical force.

[3] HRS § 707-732(1), provides, in relevant part:

**Sexual assault in the third degree.** (1) A person commits the offense of sexual assault in the third degree if:

. . . .

(c) The person knowingly engages in sexual contact with a person who is at least fourteen years old but less than sixteen years old or causes the minor to have sexual contact with the person; provided that:

(i) The person is not less than five years older than the minor; and

(ii) The person is not legally married to the minor[.]

HRS § 707-700, at the time of the alleged offenses, defined "sexual contact" as

any touching, other than acts of "sexual penetration", of the sexual or other intimate parts of a person not married to the actor, or of the sexual or other intimate parts of the actor by the person, whether directly or through the clothing or other material intended to cover the sexual or other intimate parts.

(continued...)

2

terms of imprisonment with mandatory minimums of six years and eight months in Counts 1 and 8, and ten years in Counts 2, 3, 4, 5, and 6 with mandatory minimums of one year and eight months in Counts 4, 5, and 6. All terms were to run concurrently to each other but consecutive to any other terms of imprisonment.

## DISCUSSION

On appeal, Long contends the Circuit Court: (1) erred by admitting irrelevant prior bad acts; (2) erred by failing to voir dire the jury after prejudicial news coverage was brought to its attention during trial; (3) erred by empaneling a new jury to make factual determinations necessary for sentencing enhancements; (4) abused its discretion by imposing extended life sentences consecutive to a life sentence Long was serving in another conviction; and (5) violated Long's constitutional right against cruel and unusual punishment because his extended life sentences shock the conscience.[4]

1. **The Circuit Court Did Not Abuse Its Discretion By Permitting Testimony of the Existence of a Firearm in Long's Home as a Prior Bad Act.**

Long asserts the Circuit Court erred by admitting irrelevant prior bad act evidence of his gun ownership that was more prejudicial than probative, explaining,

> [t]he only purpose of the possession of the gun would have been to ensure that [Long] appeared to be a danger to the public, or a gang member, or allow the State to bolster the testimony of the complaining witness by alluding that she may have feared [Long] by the possession of a gun to explain away the delay in reporting the alleged crimes in this matter.

Prior bad act evidence under Hawaii Rules of Evidence (HRE) Rule 404(b)[5] is admissible when not used to show action in

---

[3](...continued)
HRS § 707-700 (2014). The definition was amended in 2016 to change "a person not married to the actor" to "another." See 2016 Haw. Sess. Laws Act 231, § 32 at 753.

[4]     Long's points of error have been restyled for clarity and reordered chronologically.

[5]     HRE Rule 404(b) provides:

> Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.
> (continued...)

3

conformity therewith, and it is: (1) relevant and (2) more probative than prejudicial. See State v. Behrendt, 124 Hawai'i 90, 103, 237 P.3d 1156, 1169 (2010). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." HRE Rule 401.

HRE Rule 404(a),[6] generally prohibits evidence of a person's character or a trait of a person's character for the purpose of proving action in conformity therewith on a particular occasion. However, HRE Rule 404(b) may permit the use of evidence of other crimes, wrongs, or acts "where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident." The list of permissible purposes in Rule 404(b) "is not intended to be exhaustive 'for the range of relevancy outside the ban is almost infinite.'" State v. Clark, 83 Hawai'i 289, 300, 926 P.2d 194, 205 (1996) (quoting E.W. Cleary, McCormick on Evidence § 190, at 448 (Cleary ed. 1972). Instead, 404(b) defines one impermissible purpose. Id. at 301, 926 P.2d at 206 (citations omitted). HRE

---

[5](...continued)
> It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident. In criminal cases, the proponent of evidence to be offered under this subsection shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the date, location, and general nature of any such evidence it intends to introduce at trial.

[6] HRE Rule 404(a) provides, in relevant part:

> Character evidence generally. Evidence of a person's character or a trait of a person's character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except:
>
> > (1) Character of accused. Evidence of a pertinent trait of character of an accused offered by an accused, or by the prosecution to rebut the same[.]

4

Rule 403, provides for the exclusion of relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

On appeal, we review the trial court's relevance determination under the right/wrong standard. State v. Richie, 88 Hawai'i 19, 36-37, 960 P.2d 1227, 1244-45 (1998). The State offered Long's gun possession to show why CW did not disclose the sexual assaults earlier. This evidence is probative of CW's reasons for denying abuse by Long when directly questioned on the topic by her Father and Stepmother. CW testified that she was afraid of Long and was afraid to tell her parents about the abuse. She further testified that she was afraid that Long would hurt her parents with the handgun. This evidence does not pertain to Long's character and was not used to show action in conformity therewith in the charged offenses. Thus, the Circuit Court did not err in determining that CW's testimony that Long possessed a handgun was relevant.

The HRE Rule 403 balancing is reviewed for an abuse of discretion. Richie, 88 Hawai'i at 37, 960 P.2d at 1245. It is not clear that mere ownership or possession of a firearm is a "bad act" for 404(b) purposes. Williams v. State, 690 N.E.2d 162, 174 (Ind. 1997). CW's testimony was merely that Long possessed a handgun in his home. Furthermore, the court instructed the jury that the testimony regarding the gun "may only be considered for the purpose of showing the state of mind of [CW]." Thus, any risk of prejudice was reduced by the court's instruction. See, e.g., State v. Brooks, 123 Hawai'i 456, 471, 235 P.3d 1168, 1183 (App. 2010) (the jury is presumed to follow the court's instructions). Therefore, the Circuit Court did not abuse its discretion by admitting CW's testimony regarding Long's gun ownership.

2.     The Circuit Court Did Not Err By Denying Long's Request to Individually Voir Dire the Jurors Regarding Exposure to a Potentially Prejudicial Newscast.

Long argues the Circuit Court's refusal to voir dire the jury after prejudicial news coverage was brought to its attention during trial was error.[7] Long claims this refusal denied his right to a fair trial.

A fair trial by an impartial jury is a basic protection provided by the United States and Hawai'i State Constitutions to the accused in a criminal case. State v. Keliiholokai, 58 Haw. 356, 356, 569 P.2d 891, 893 (1977). Inherent in this protection is the defendant's right to receive a fair trial by an impartial jury, free from improper prejudice resulting from "outside influences." Id. Where the existence of an outside influence is brought to the attention of the trial court, the court must ascertain the extent of the influence and then, in its sound discretion, take appropriate measures to assure a fair trial. Id. at 358, 569 P.2d at 894.

This inquiry is a two-step process. Before questioning the jury, the court must first determine whether the contents of the news account were of a nature that "rises to the level of being substantially prejudicial." Keliiholokai, 58 Haw. at 359, 569 P.2d at 895; see also State v. Okumura, 78 Hawai'i 383, 394, 894 P.2d 80, 91 (1995), abrogated on other grounds, State v. Cabagbag, 127 Hawai'i 302, 277 P.3d 1027 (2012), (newscast concerning appellants' "alleged involvement in a burglary other than those charged" and juror's description of what she had seen of the broadcast in front of other jurors). "If it does not rise to such a level, the trial court is under no duty to interrogate the jury." State v. Williamson, 72 Haw. 97, 102, 807 P.2d 593, 596 (1991) (dictionary brought into deliberation room by juror) (quoting Keliiholokai, 58 Haw. at 359, 569 P.2d at 895 (portion of newspaper article describing defendant's prior convictions was read into the record); see also United States v. Hankish, 502 F.2d 71, 77 (4th Cir. 1974) ("We do not hold that every newspaper

---

[7]     Long also raised the issue in his motion for new trial. However, Long does not contest the denial of this motion on appeal.

article appearing during trial requires such protective measures. Unless there is substantial reason to fear prejudice, the trial judge may decline to question the jurors.")  "[W]hether it does rise to the level of substantial prejudice . . . is ordinarily a question 'committed to the trial court's discretion.'" Williamson, 72 Haw. at 102, 807 P.2d at 596 (quoting Keliiholokai, 58 Haw. at 359, 569 P.2d at 895).  Where the trial court finds the outside influence could substantially prejudice the jury, it must examine "potentially tainted jurors, outside the presence of the other jurors, to determine the influence, if any, of the extraneous matters."  Id.

While Long argues on appeal that the "pre-trial publicity [was] extensive and [] likely prejudicial" and required examination of the jury, the record does not support this assertion.  Long does not point to any indication in the record that the publicity occurred "pre-trial."[8]  The content of this report was described by Long's attorney as "a segment of [Long] on the TV regarding his prior cases."  Long himself said the report was about "my past cases, my past two cases and not nothing about this case."  No other description or documentation was presented to support this oral request for voir dire.  Long's statements did not provide a basis to evaluate the factual content of the newscast itself, but rather left the trial court to speculate as to the nature of that content.  While it cannot be said that there was *no* description of the content, Long did not specify which of his "prior cases" in particular the newscast covered,[9] and without more, failed to alert the court that the news coverage was prejudicial.

"[T]he burden of showing essential unfairness [must] be sustained by him who claims such injustice and seeks to have the result set aside, and . . . it [must] be sustained not as a

---

[8]     Rather, Long brought the matter up on the fifth of six days of trial, and argued that the timing of the media report which he saw broadcast the night before, was suspicious.

[9]     We note that the record contains information that Long had been indicted for drug charges, theft, assault, harassment, and resisting arrest, as well as had been found guilty, but not yet sentenced, for the sexual assaults of two teenage girls.  He also filed a federal lawsuit against the Honolulu Police Department, alleging he was beaten during a traffic stop.

matter of speculation but as a demonstrable reality." State v. Graham, 70 Haw. 627, 637, 780 P.2d 1103, 1109-10 (1989) (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 281 (1942); Beck v. Washington, 369 U.S. 541 (1962); Darcy v. Handy, 351 U.S. 454, 462 (1956)). The burden of production is on the defendant, because "[i]f the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain [a] jury trial under the conditions of the present day." Graham, id. at 637, 780 P.2d at 1109-10 (quoting Holt v. United States, 218 U.S. 245, 251 (1910)). When deciding whether the publicity was potentially prejudicial, the "test is necessarily highly fact-specific." United States v. Bermea, 30 F.3d 1539, 1557 (5th Cir. 1994) (citing United States v. Aragon, 962 F.2d 439, 444 (1992)). Without Long presenting the specific nature of the news coverage, we cannot conclude that the news account was prejudicial. See United States v. Dillard, 884 F.3d 758, 769 (7th Cir. 2018) ("There is no general presumption of unfairness caused by media exposure; instead the danger turns on 'the severity of the threat' posed by the particular publicity, specifically, 'the nature of the information so publicized and the degree of juror exposure to it.'") (quoting United States v. Thomas, 463 F.2d 1061, 1063 (7th Cir. 1972)). "The failure of the accused to make the alleged prejudicial media accounts a part of the record precludes the reviewing court from determining whether there was any prejudice, and the courts reject the claim of the accused, presuming that there was no prejudice." Kletter, 55 A.L.R.6th 157 at § 107 (2010). See, e.g., People v. Barrow, 549 N.E.2d 240, 257 (Ill. 1989) ("unsworn statement of defense counsel as to the contents of allegedly prejudicial newspaper articles is an insufficient foundation to show prejudice"); Gibbens v. State, 434 N.E.2d 82, 84 (Ind. 1982) ("record contains only the bare assertion of defense counsel that such an article appeared. . . . [N]either the trial court nor this Court can assess the likelihood of resultant prejudice."); State v. Tyler, 840 P.2d 413, 431 (Kan. 1992) ("complained-of television news story has not been provided in the record and, therefore, it is impossible to determine its potential prejudicial effect").

On this record, we cannot conclude the Circuit Court abused its discretion in refusing to individually voir dire the jury.

3.      **The Circuit Court Did Not Violate Long's Double Jeopardy Rights By Empaneling a Second Jury to Hear Evidence on Extended-Term Sentencing.**

Long claims the Circuit Court violated double jeopardy principles by empaneling a second jury to make the factual findings necessary for extended-term sentencing.  Long appears to argue that the use of a second jury to determine his sentence represents a second prosecution after conviction.

Based on parallel provisions of the United States and Hawai'i Constitutions, Hawai'i recognizes that the right against double jeopardy protects individuals from:  "(1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense."  State v. Rogan, 91 Hawai'i 405, 416, 984 P.2d 1231, 1242 (1999).  The constitutional protection against double jeopardy "also embraces the defendant's 'valued right to have his trial completed by a particular tribunal.'"  Arizona v. Washington, 434 U.S. 497, 503 (1978) (quoting United States v. Jorn, 400 U.S. 470, 484 (1971)).  However, that rule is subject to the caveat, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments."  Wade v. Hunter, 336 U.S. 684, 689 (1949).

In State v. Kamae, the Hawai'i Supreme Court held that the extended-term hearing "is a separate criminal proceeding apart from the trial of the underlying substantive offense."  56 Haw. 628, 635, 548 P.2d 632, 637 (1976) (citing Specht v. Patterson, 386 U.S. 605 (1967); United States ex rel. Gerchman v. Maroney, 355 F.2d 302 (1966)).  As such, the State seeking an extended term of imprisonment "must be considered to be 'the making of a new charge leading to criminal punishment.'"  Id. at 635, 548 P.2d at 637 (quoting Specht, 386 U.S. at 610).  Here, jeopardy for the underlying substantive offense attached on

November 19, 2015 when the jury was empaneled and sworn. See Moriwake, 65 Haw. at 47, 51, 647 P.2d at 705, 709. On December 2, 2015, jeopardy for the underlying substantive offense ended when the trial court received the jury's guilty verdict. See State v. Quitog, 85 Hawai'i 128, 141, 938 P.2d 559, 572 (1997). Thereafter, a separate criminal proceeding seeking an extended term was held. The trial court empaneled a new jury to hear evidence on the extended-term sentencing because members of the original jury had moved away from Hawai'i during the delay caused by Long's trial counsel's contentious withdrawal. Long's right to have his trial completed by a particular tribunal was satisfied because a single jury pronounced the verdict in the substantive underlying offense. His extended-term sentencing was a separate criminal proceeding that began after jeopardy ended.

This view is further supported by Hawai'i's case law on resentencing after remand, which implicitly permits sentencing by a different jury. When a sentence is illegal, the appellate courts may vacate the sentence and remand to the trial court for resentencing. See, e.g., Kamae, 56 Haw. at 638, 546 P.2d at 639; Territory v. Savidge, 14 Haw. 286, 289 (1902); see also United States v. DiFrancesco, 449 U.S. 117, 136 (1980) ("double jeopardy considerations that bar reprosecution after an acquittal do not prohibit review of a sentence").

For example, in 2000, the U.S. Supreme Court held in Apprendi v. New Jersey, that juries must find the facts that enhance sentencing beyond a reasonable doubt, and extended sentencing where a jury did not make such finding, violated the 6th Amendment. 530 U.S. 466, 490 (2000). As such, Apprendi and the subsequent case, Cunningham v. California, 549 U.S. 270 (2007), rendered Hawai'i's then-existing sentencing scheme invalid. State v. Maugaotega, 115 Hawai'i 432, 168 P.3d 562 (2007). Where a sentence was vacated based upon an Apprendi challenge, the Hawai'i Supreme Court held the trial court could, based on its inherent authority, empanel a jury for determination of the necessary factual findings required for re-sentencing. See State v. Mark, 123 Hawai'i 205, 250, 231 P.3d 478, 523 (2010) (interpreting State v. Jess, 117 Hawai'i 381, 388, 184 P.3d 133,

140 (2008)); see also Flubacher v. State, 142 Hawai'i 109, 114, 414 P.3d 161, 166 (2018).  In these cases, the supreme court authorized the two-jury scenario that Long argues against.

Moreover, a number of states, including Arizona, California, and Oregon, have rejected arguments that double jeopardy requires sentencing enhancements must be tried with the elements of the underlying offense.  See State v. Ring, 65 P.3d 915, 932 (Ariz. 2003) ("Although completing a defendant's trial with the same judge or jurors is ideal, a defendant holds no absolute right to such an arrangement."); People v. Anderson, 211 P.3d 584, 605 (Cal. 2009) ("Defendant has not identified, nor have we found, a single decision holding that aggravating factors must be retried together with all the elements of the underlying offenses to which they attach."); State v. Sawatzky, 125 P.3d 722, 723 (Or. 2005) ("double jeopardy do[es] not prohibit the trial court from empaneling a jury to determine aggravating factors on which the trial court may rely in imposing sentences that exceed the presumptive range for the felony crimes to which [appellant] pleaded guilty.").

Based on the foregoing, we reject Long's argument that empaneling a second jury to hear the extended-term sentencing matter violated his double jeopardy rights.

4    **The Circuit Court Did Not Abuse Its Discretion by Sentencing Long to Two Life Sentences.**

Long argues that the Circuit Court abused its discretion by sentencing him to extended and consecutive terms of imprisonment.

HRS § 706-661 (2014)[10] authorizes the sentencing court to sentence a defendant to an extended term of imprisonment if

---

[10]    HRS § 706-661 provides, in relevant part:

**Extended terms of imprisonment.**  The court may sentence a person who satisfies the criteria for any of the categories set forth in section 706-662 to an extended term of imprisonment, which shall have a maximum length as follows:

.  .  .  .

(2)    For a class A felony – indeterminate life term of imprisonment[.]

11

the criteria listed under HRS § 706-662 (2014)[11] are satisfied. Summarizing the procedure for the imposition of extended sentences, the Hawai'i Supreme Court maintained:

> The procedure for imposing extended terms of imprisonment, located in HRS § 706-664 [(2014)][12] . . . , provides that if the jury (the trier of fact) finds the facts that are necessary for the imposition of an extended term sentence under HRS § 706-662, the court may impose an indeterminate term of imprisonment as provided in HRS § 706-661. HRS § 706-662 provides that a defendant "who has been convicted of a felony may be subject to an extended term of

---

[11] HRS § 706-662 provides, in relevant part:

A defendant who has been convicted of a felony may be subject to an extended term of imprisonment under section 706-661 if it is proven beyond a reasonable doubt that an extended term of imprisonment is necessary for the protection of the public and that the convicted defendant satisfies one or more of the following criteria:

. . . .

    (4)    The defendant is a multiple offender in that:

        (a)    The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for any felony[.]

[12] HRS § 706-664 provides:

**Procedure for imposing extended terms of imprisonment.** (1) Hearings to determine the grounds for imposing extended terms of imprisonment may be initiated by the prosecutor or by the court on its own motion. The court shall not impose an extended term unless the ground therefor has been established at a hearing after the conviction of the defendant and written notice of the ground proposed was given to the defendant pursuant to subsection (2). Subject to the provisions of section 706-604, the defendant shall have the right to hear and controvert the evidence against the defendant and to offer evidence upon the issue before a jury; provided that the defendant may waive the right to a jury determination under this subsection, in which case the determination shall be made by the court.

    (2) Notice of intention to seek an extended term of imprisonment under section 706-662 shall be given to the defendant within thirty days of the defendant's arraignment. However, the thirty-day period may be waived by the defendant, modified by stipulation of the parties, or extended upon a showing of good cause by the prosecutor. A defendant previously sentenced to an extended term under a prior version of this chapter shall be deemed to have received notice of an intention to seek an extended term of imprisonment.

    (3) If the jury, or the court if the defendant has waived the right to a jury determination, finds that the facts necessary for the imposition of an extended term of imprisonment under section 706-662 have been proven beyond a reasonable doubt, the court may impose an indeterminate term of imprisonment as provided in section 706-661.

imprisonment under section 706-661 if it is proven beyond a reasonable doubt that an extended term of imprisonment is necessary for the protection of the public[,]" and if the defendant satisfies one or more of the other criteria listed therein. The sentencing terms or ranges are located in HRS § 706-661, which provides that "the court may sentence a person who satisfies the criteria for any of the categories set forth in section 706-662," to an extended term of imprisonment.

State v. Keohokapu, 127 Hawai'i 91, 110-11, 276 P.3d 660, 679-80 (2012) (footnotes and emphasis omitted).

Here, a jury found the State proved beyond a reasonable doubt that Long was a multiple offender and that it was necessary for the protection of the public to extend his sentence from a twenty-year term of imprisonment to a life sentence in prison. See HRS § 706-662; see also HRS § 706-664. Long does not challenge the jury's findings on appeal. Given that the jury made the required findings under HRS § 706-662, it was within the Circuit Court's discretion to sentence Long to an extended term of imprisonment. See HRS § 706-661; Keohokapu, 127 Hawai'i at 111, 276 P.3d at 680.

Under HRS § 706-606 (2014), the sentencing court shall consider the following factors in determining the particular sentence to be imposed:

(1)     The nature and circumstances of the offense and the history and characteristics of the defendant;

(2)     The need for the sentence imposed:

(a)     To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;

(b)     To afford adequate deterrence to criminal conduct;

(c)     To protect the public from further crimes of the defendant; and

(d)     To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     The kinds of sentences available; and

(4)     The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

"[A]bsent clear evidence to the contrary, it is presumed that a sentencing court will have considered all the

13

factors." State v. Hussein, 122 Hawai'i 495, 518, 229 P.3d 313, 336 (2010) (ellipses, emphasis, and brackets omitted). Long provides no evidence that the Circuit Court failed to consider the HRS § 706-606 factors, but instead, contends, *ipse dixit*, that a twenty-year sentence would have been "more than sufficient" to achieve the goals set forth under HRS § 706-606(2). However, "[a] sentencing judge generally has broad discretion in imposing a sentence." State v. Kong, 131 Hawai'i 94, 101, 315 P.3d 720, 727 (2013) (quoting State v. Rivera, 106 Hawai'i 146, 154, 102 P.3d 1044, 1052 (2004)).

The Circuit Court specifically stated that it decided upon Long's sentence after consideration of statutory factors including, the heinous nature of the crime, the victim's age and Long's position of trust, and the need to provide deterrence, protect the public, and avoid disparities among Long's other sentences for similar crimes. Weighing those considerations, the Circuit Court accepted the jury's recommendation and sentenced Long to extended terms of life imprisonment with the possibility of parole as to Count 1 and 8. See HRS § 706-661. On this record, the Circuit Court did not abuse its discretion in sentencing Long to extended terms of imprisonment. See Kong, 131 Hawai'i at 101, 315 P.3d at 727.

Long also argues that the Circuit Court erred in sentencing him to consecutive terms of imprisonment with respect to his preexisting terms of imprisonment. The Circuit Court ran Long's sentences imposed in this case concurrent to each other but consecutive to any other terms of imprisonment. When imposing consecutive terms of imprisonment, "the sentencing court is not required to articulate and explain its conclusions with respect to every factor listed in HRS § 706-606." Kong, 131 Hawai'i at 102, 315 P.3d at 728. However, the sentencing court "is required to articulate its reasoning only with respect to those factors it relies on in imposing consecutive sentences." Id. (quoting Hussein, 122 Hawai'i at 509-10, 229 P.3d at 327-28). The supreme court recognized two purposes served by requiring the sentencing court to state on the record the reasons for imposing consecutive terms of imprisonment: "(1) identifying

14

the facts or circumstances within the range of statutory factors that the court considered, and (2) confirming for the defendant, the victim, the public, and the appellate court that the decision was deliberate, rational, and fair." Kong, 131 Hawai'i at 102-03, 315 P.3d at 728-29 (citing Hussein, 122 Hawai'i at 509-10, 229 P.3d at 327-28).

In granting in part the State's request to sentence Long to consecutive terms of imprisonment, the Circuit Court explained:

> Additionally, the Court makes the following findings. After reviewing Hawaii Revised Statutes 706-668.5, 706-606, and the Supreme Court's guidance in State v. Kumukau, 71 Hawaii 218, [787 P.2d 682] a 1990 case, specifically the Court finds with respect to the nature of the offense and the characteristics of the defendant, the rape of a child in this case in his care is a heinous crime. And given defendant's criminal record, the defendant is a serial child molester.
>
> In reviewing the need for the sentence imposed, the Court finds that it must reflect the seriousness of the offense, promote respect for law, and that the rape again of a child in his care is in fact a heinous crime.
>
> In affording adequate deterrence, the sentence must also reflect that the defendant is a serial child molester with three separate convictions and that incarceration is needed as deterrence for future conduct and that there is a need for the protection of the public as found by the jury.
>
> The Court is also mindful that the sentence imposed in this case be similar as the other sentences for defendant's similar conduct. Accordingly, the terms of imprisonment in this case are to run concurrent with each other but consecutive to any other term of incarceration that the defendant is serving.

The Circuit Court's statements regarding the nature of Long's offenses and his criminal record relate directly to the factor articulated in HRS § 706-606(1) -- "The nature and circumstance of the offense and the history and characteristics of the defendant[.]" In addition, the Circuit Court specifically found that the sentence would reflect the seriousness of the offense, promote respect for the law, and provide adequate deterrence, and protect the public, which relate to the factors under HRS § 706-606 (2)(a)-(c). The Circuit Court, therefore, sufficiently placed on the record its reasoning for imposing a consecutive sentence and did not abuse its discretion in imposing such a sentence.

15

5.     Long's Sentence Does Not Rise to the Level of Cruel and Unusual Punishment.

Long asserts that his extended terms of imprisonment constitute cruel and unusual punishment.  Rather than challenge the legal authority authorizing the Circuit Court to give extended terms of imprisonment, Long challenges the Circuit Court's decision to exercise that authority.

> The "cruel and unusual" punishment provision in the Hawai'i Constitution incorporates a proportionality test. When interpreting article I, section 12 of the Hawai'i Constitution this court has held that

>> the standard by which punishment is to be judged under the "cruel and unusual" punishment provision of the Hawaii Constitution is whether, in the light of developing concepts of decency and fairness, the prescribed punishment is so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community.

State v. Guidry, 105 Hawai'i 222, 237, 96 P.3d 242, 257 (2004) (brackets omitted) (quoting State v. Davia, 87 Hawai'i 249, 258, 953 P.2d 1347, 1356 (1998)).  "A penalty which is legal under the applicable sentencing statute is generally held not to be cruel and unusual, if the statute itself is constitutionally valid." State v. Iaukea, 56 Haw. 343, 359, 537 P.2d 724, 735 (1975).

Furthermore, "[t]he question of what constitutes an adequate penalty necessary for the prevention of crime is addressed to the sound judgment of the legislature and the courts will not interfere with its exercise, unless the punishment prescribed appears clearly and manifestly to be cruel and unusual."  State v. Solomon, 107 Hawai'i 117, 131, 111 P.3d 12, 26 (2005).  Hawai'i courts have used the following three-pronged test to determine whether a punishment is "clearly and manifestly" cruel and unusual:

> (1) the nature of the offense and/or the offender, with particular regard to the degree of danger posed by both to society; (2) the extent of the challenged penalty as compared to the punishments prescribed for more serious crimes within the same jurisdiction; and (3) the extent of the challenged penalty as compared to the punishment prescribed for the same offense in other jurisdictions.

Id. at 132, 111 P.3d at 27 (quoting State v. Jenkins, 93 Hawai'i 87, 114, 997 P.2d 13, 40 (2000)). "In using this test, the nature of the offense and the danger the offender poses to society are the key factors in this determination." Id.

On appeal, Long summarily argues that his sentence "is so disproportionate to the conduct proscribed and is of such a duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community." Long provides no explanation as to how his sentence was "clearly and manifestly" cruel and unusual in relation to the nature of the offense or offender, nor does he argue that the consecutive sentences of life imprisonment with the possibility of parole were based upon unconstitutional statutes. Furthermore, Long presents no evidence that more serious offenses received lesser sentences than the sentence imposed upon Long or that other jurisdictions impose lesser penalties for the same offense.

The Circuit Court determined that, based on his criminal record, Long was a serial child molester and that the rape of a child in his care is a heinous crime. The Hawai'i Supreme Court has previously ruled that a life sentence with the possibility of parole imposed as an extended term in a felony rape case did not amount to cruel and unusual punishment. See Iaukea, 56 Haw. at 360, 537 P.2d at 736 (defendant convicted under prior Hawai'i statute for rape in the first degree); see also Ortiz v. State, 137 Hawai'i 205, 366 P.3d 1084, No. CAAP-14-0001136, 2016 WL 300214 at *2 (App. Jan. 22, 2016) (SDO). Long provides no argument to the contrary.

Long has failed to demonstrate how his punishment was "clearly and manifestly" cruel and unusual, Solomon, 107 Hawai'i at 131, 111 P.3d at 26, and failed to show that his sentence was "so disproportionate to the conduct proscribed and is of such duration as to shock the conscience of reasonable persons or to outrage the moral sense of the community[.]" Guidry, 105 Hawai'i at 237, 96 P.3d at 257. Thus, Long's argument that the Circuit

Court's sentence constituted cruel and unusual punishment is without merit.

## CONCLUSION

For the foregoing reasons, the April 5, 2017 Judgment of Conviction and Sentence entered by the Circuit Court of the First Circuit is affirmed.

DATED:  Honolulu, Hawai'i, February 28, 2020.

On the briefs:

Shawn A. Luiz,
for Defendant-Appellant.

Chief Judge

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Associate Judge

Associate Judge